UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cr-284-MOC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| JEREMY LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release (Doc. No. 88). The Government has filed a response, noting that it did does not oppose granting early release. (Doc. No. 91). Having carefully considered the motion and reviewed the pleadings, the Court will **GRANT** Defendant's motion.

## I. BACKGROUND

Defendant was convicted in 2013 of Knowing and Unlawfully Use, Carry or Possess a Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime and Unlawful Possession or Transport of a Firearm and/or Ammunition by a Convicted Felon. (Doc. No. 26, p. 1). The Court sentenced Defendant to 60 months imprisonment and 30 months imprisonment on the counts, respectively, for a total sentence of 90 months imprisonment. (Id., p. 2). Defendant's sentence was reduced to 84 months in 2015. (Doc. No. 39).

Defendant began his original term of supervised released after his release from the Bureau of Prisons ("BOP"). The Court revoked that original term of supervised release on January 24, 2020, due to new law violations. (Doc. No. 61, p. 1). Defendant returned to

supervision on November 13, 2020. (Doc. No. 81, p. 1). However, in September 2021, the

United States Probation Office submitted a Petition alleging various new law violations incurred

by Defendant. (Doc. No. 81, pp. 1–2).

The Government and Defendant entered into an agreed order in which Defendant did not

contest his new law violations (Trafficking in Cocaine, Resisting Public Officer, Assault by

Strangulation, Assault on a Female, and Assault on a Female). (Doc. No. 87, pp. 1–3). The

agreed order called for the revocation of Defendant's supervision, the imposition of a sentence of

37 months imprisonment on the Section 924(c) count, followed by an additional 10-month term

of supervised release, the imposition of a concurrent sentence of 24 months imprisonment on the

922(g) count, and no further supervision on that count. (Id., p. 4). The Court entered the order on

June 14, 2022. (Id., p. 9).

Defendant's projected release date is May 3, 2024. (Gov. Ex. 1). He now moves under 18

U.S.C. § 3582(c)(1)(A)(i) for a sentence reduction, relying in large part on his medical history

and current medical condition – namely, that he suffered multiple strokes between 2016 and

2019, that he had a stroke-like event in July of this year, and that he needs to be moved to a

higher care facility. (Doc. No. 88, pp. 1–2).

## II.    DISCUSSION

The Sentencing Commission issued an amended policy statement addressing reduction of

sentences under § 3582(c)(1)(A). See U.S.S.G. § 1B1.13 (2023). That section provides that a

court may reduce the term of imprisonment if the Court finds that: (1) "extraordinary and

compelling reasons warrant the reduction. . .;" (2) "the defendant is not a danger to the safety of

any other person or to the community. . .;" and (3) "the reduction is consistent with this policy

statement." U.S.S.G. § 1B1.13(a)(1-3).

That section provides that extraordinary and compelling reasons exist under a variety of circumstances. U.S.S.G. § 1B1.13(b). Those circumstances include when a defendant is "suffering from a serious physical or medical condition. . .that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he is not expected to recover" and/or the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B)(i) and (C).

The Government has submitted medical records from BOP, which support Defendant's representations regarding his health. The records confirm that Defendant has a stroke history, that he had a stroke-like event in July of this year, and that he needs to be moved to a higher care facility. (See Gov. Ex. 3). For example, a prior stroke was documented during a Heath Services encounter on September 21, 2022 – referred to in the report as a "CVA" in 2018 or cerebrovascular accident. (Gov. Ex. 3, p. 1). Defendant's ongoing hypertension is noted during the same encounter and Defendant is prescribed a variety of medications, some of which are intended to deal with the treatment of his hypertension, which can lead to a stroke. (Govt. Ex. 3, pp. 1–5). Defendant's stroke-like incident, requiring his transfer to a hospital, is noted in numerous records. (Gov. Ex. 3, pp. 6–12). One such report from the treating hospital noted that the:

> . . .patient has one or more medical problems with high complexity. The patient's care requires extensive review and analysis of data and close monitoring. The risk of complications and/or morbidity or mortality is high. Patient has multiple complex medical problems and is on high risk medications that place them at risk for significant complications including increased morbidity and mortality which is extending their stay in the hospital and requires high complexity decision making regarding their care and treatment plan. Patient continues to be high risk for poor

outcome. Patient is requiring IV medications and intensive monitoring for toxicity or adverse clinical course and is at high risk for harm to bodily function.

(Gov. Ex. 3, p. 12).

Finally, as reported by Defendant, the medical staff at BOP concluded that he needs a higher level of care. More specifically, citing a prior cerebrovascular accident with lingering symptoms, his recent trip to the hospital, his worsening right-sided weakness, frequent medical interventions, limited mobility that affects Defendant's "ADL" or activities of daily living, and multiple diagnoses requiring multiple medications and interventions, a nurse practitioner stated on August 8, 2023, that the nurse "[p]reviously discussed with MD and care level to be changed to Care 2." (Gov. Ex. 3, p.13).

Based on the above, the Government states that it believes there is evidence Defendant has a medical condition that limits his ability to provide self-care within the environment of a correctional facility. The Court agrees and finds that Defendant's health prognosis is an "extraordinary and compelling" reason justifying his release.

The Court has further considered the sentencing factors in Section 3553(a), and the Court finds that these factors similarly counsel in favor of Defendant's release. Defendant's crimes were serious, but Defendant has served most of his sentence and is now in increasingly bad health and in an increasingly debilitated position. His medical diagnosis and prognosis dramatically reduce the risk of danger he would pose to the safety of other persons or the community upon release. See 18 U.S.C. § 3142(g)(3). Defendant's diagnosis and prognosis are personal characteristics that additionally favor a reduction in sentence pursuant to Section 3553(a). Granting Defendant's early release does not undermine the purposes and factors set forth under Section 3553(a).

Finally, the Government has noted in its response that there was a victim of the new law violations listed in Defendant's last Petition – Lanella Ratchford. Additionally, Defendant still has an outstanding order for his arrest out of Gaston County for a misdemeanor Assault on Female charge. (Docket No. 21CR54355). The victim in that case is Rashawne Barnwell. The Government requests that the Court order a special condition prohibiting Defendant from contacting, in any way on his own or through others, Ms. Ratchford and Ms. Barnwell. The Court will grant the Government's request and order Defendant not to contact Ms. Ratchford or Ms. Barnwell.

### III. CONCLUSION

The Court finds that Defendant's serious medical diagnosis and prognosis constitute the kind of "extraordinary and compelling" reasons that allow the Court to sentence him to time served and grant his release. The Court will grant Defendant's Motion.

### ORDER

(1) **IT IS, THEREFORE, ORDERED** that Defendant's Motion for Compassionate Release (Doc. No. 88) is **GRANTED**. Defendant's term of imprisonment is hereby reduced to **TIME SERVED**.

(2) **IT IS FURTHER ORDERED** that, upon release from imprisonment, Defendant shall be placed on supervised release for a term of 10 months.

(3) Defendant is **ORDERED** released from the custody of the United States Bureau of Prisons and/or the custody of the U.S. Marshals Service. To allow the Bureau of Prisons/United States Marshal/Pretrial Service adequate time, such are allowed up to ten days to comply with this order.

**(4)** **Upon release, Defendant shall not contact, in any way on his own or through others, Ms. Ratchford or Ms. Barnwell.**

**(5)** The Clerk of Court shall certify copies of this Order to the U.S. Bureau of Prisons, U.S. Marshals Service, and the U.S. Probation and Pretrial Services Office.

Signed: December 15, 2023

Max O. Cogburn Jr.
United States District Judge